AGNES MILLER *vs.* EDWIN P. CURTIS.

Worcester.    October 7, 1892. — January 17, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Assault and Battery — Evidence.*

In an action for an indecent assault upon a woman, evidence of specific acts of the plaintiff, more than twenty years previously, tending to show that she had repeatedly made false charges of indecent assaults upon her, with a view to extort money from innocent men, although limited to the question of damages, is incompetent.

TORT, for an assault and battery on three separate occasions, the first in March, 1889, at Worcester, and the other two in May, 1889, at Spencer. Answer, a general denial. Trial in the Superior Court, before *Corcoran*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff's evidence showed that an assault and battery was made by the defendant upon the plaintiff, who is a married woman, and attempts by him to have sexual intercourse with her without her consent, at Worcester and at Spencer.

The plaintiff and her husband were both witnesses, and, after they had testified, the following evidence was admitted, against the objection of the plaintiff, all of which related to transactions unconnected with and over twenty years before the alleged assaults.

One Fottler testified as follows: "I knew the Millers thirty years ago at Hingham; my father bought real estate of them, and I sold goods to them. I visited them in Westborough about the bill six or seven years after; both were present. Mrs. Miller made the remark that they owned the property. I expressed a little wonder at their owning it, not having lived there very long. She said she got the money to pay for it herself, and she turned to her husband and said she knew how to get money out of these rich old fellows; that was the remark. Her husband stood near, and she turned and said as long as her husband did not find fault it was all right."

Charles Tenney of Westborough testified that he was eighty years of age, and very deaf; that he worked for the Millers in Westborough twenty-five years ago; that on one occasion he was called down cellar by the plaintiff to do some work, and soon after they got down she rushed up again and complained to her husband that she had been assaulted; and that he was obliged to leave his place without receiving his wages.

Patrick Gately of Spencer testified that he worked for the Millers in Spencer sixteen years ago. He related a conversation with the plaintiff, the details of which were unfit for publication; and which was to the effect that the plaintiff told him that, when they lived in Westborough, her husband got $18 out of a man who assaulted her, and she was so mad because he did not get more that she threw the money in the fire.

Charles M. Fay of Westborough testified that, in 1867, he worked for one Winslow in Westborough, and the Millers lived near them; that the plaintiff at one time told him that she was going to sue Winslow for insulting her; and that the witness told that to Winslow.

Charles P. Winslow testified that he had lived in Westborough about forty years; that when he returned from the war, he lived near the Millers; that he remembered Fay's telling what the plaintiff said about him; that previously to this, he was alone with her only once, two or three days before; that he went to Miller's to get him to go skating; that the plaintiff came to the door, and got him to come in to see the stock; that they looked at the cattle in the barn, and then went into the house; that he did not stop long, and nothing out of the way took place;

and that he was not alone with her at other times, and nothing of an improper nature ever took place between them.

Charles H. Fayerweather of Northborough testified that he had lived near the Millers in Westborough, which was over twenty years ago, and had dealings with them; that he sold a heifer to them, which they led away with a halter they borrowed of him; that he drove to their home to get the halter, and met the plaintiff, who got it for him; that that was all that took place; that a little later he had a talk with Miller, who told him he must settle for assaulting his wife; that Miller told him to think it over, and later called again and told him he could settle for $50; and that the witness refused to pay him anything.

The plaintiff and her husband had both been cross-examined regarding each of the incidents testified to by these witnesses, and had denied them wholly. The judge, in admitting the evidence, instructed the jury that it was to be considered only on the question of damages.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

The case was argued at the bar in October, 1892, and afterwards was submitted on the briefs to all the judges.

*W. A. Gile,* (*C. S. Forbes* with him,) for the plaintiff.

*W. S. B. Hopkins,* (*F. B. Smith* with him,) for the defendant.

KNOWLTON, J. The defendant was allowed to introduce evidence of several transactions and conversations with the plaintiff, all occurring more than twenty years ago, which tended to show that she had repeatedly made false charges of indecent assaults upon her, with a view to extort money from innocent men. The defendant denies the charge made against him in the suit, and contends that the plaintiff is trying unjustly to obtain money from him.

In any case, where the question is whether the defendant has committed a crime, it would naturally affect the opinion of jurors to know that he had often committed similar crimes; but evidence of such facts is never admitted to prove a defendant's guilt. *Commonwealth* v. *Jackson,* 132 Mass. 16. *Commonwealth* v. *Robinson,* 146 Mass. 571. That a person has committed one crime has no direct tendency to show that he committed another similar crime which had no connection with the first; and a

person charged with one offence cannot be expected to come to court prepared to meet a charge of another. If the doing of one wrongful act should be deemed evidence to prove the doing of another of a similar character which has no connection with the first, issues would be multiplied indefinitely without previous notice to the defendant, and greatly to the distraction of the jury. It is too clear for argument, under the authorities, that most of the evidence excepted to was not competent on the question of liability, and the defendant does not seriously contend that it was.

It is argued, however, that it was competent on the question of damages, and the jury were instructed to consider it only on that question. There is much authority for the proposition, that in a suit of this kind, when a plaintiff seeks damages for an injury to her feelings, growing out of the indecency of the defendant's conduct, her character in regard to chastity is in issue, and her damages depend somewhat on the question whether she is a virtuous woman, who would be greatly shocked at the peculiar nature of the assault, or a woman who is accustomed to yield herself to illicit intercourse. There has been much difference of opinion among judges in regard to the evidence to be received in such cases. It has been held that evidence of general reputation in regard to chastity is competent, and sometimes that specific acts of lewdness may be shown, and sometimes that they may not. *Mitchell* v. *Work*, 13 R. I. 645. *Gore* v. *Curtis*, 81 Maine, 403. *Watry* v. *Ferber*, 18 Wis. 500. *Ford* v. *Jones*, 62 Barb. 484. *Gulerette* v. *McKinley*, 27 Hun, 320, 324. See also *Sheahan* v. *Barry*, 27 Mich. 217; *Johnson* v. *Caulkins*, 1 Johns. 116; *West* v. *Druff*, 55 Iowa, 335; *White* v. *Murtland*, 71 Ill. 250; *Love* v. *Masoner*, 6 Baxter, 24; *Carpenter* v. *Wall*, 11 A. & E. 803. *Boynton* v. *Kellogg*, 3 Mass. 189.

If it were permissible to show specific acts of criminal intercourse on the part of the plaintiff to affect the damages to be awarded in actions for an indecent assault, it would not follow that the evidence excepted to in the present case should have been admitted. Most, if not all, of this testimony tended to prove, not that the plaintiff had had criminal intercourse with other men, but that she had falsely pretended that others had indecently assaulted her, with a view to extort money from them.

The rule contended for certainly should not be extended so far as to admit testimony of common crimes and ordinary wrongful acts, merely to show general depravity.

But we are inclined to hold the evidence incompetent on broader grounds. It is a general rule, which has been adhered to with great strictness in this Commonwealth, that, when character is in issue, it may be shown only by evidence of general reputation, and not by proof of specific acts. This is the rule in actions of slander. *Chapman* v. *Ordway*, 5 Allen, 593. *Parkhurst* v. *Ketchum*, 6 Allen, 406. *Clark* v. *Brown*, 116 Mass. 504. *McLaughlin* v. *Cowley*, 131 Mass. 70. So also in prosecutions for rape, where the character for chastity of the woman is involved. *Commonwealth* v. *Harris*, 131 Mass. 336. The same rule applies in criminal cases where the accused introduces evidence of his good character, and there is evidence in rebuttal. *Commonwealth* v. *O'Brien*, 119 Mass. 342.

The principal reason for this rule is, that a multiplicity of issues would be raised if special acts, covering perhaps a lifetime, could be shown. It might be necessary to go into the circumstances attending each act before it could be determined what its nature was, and what effect should be given to it. It would be impossible for the opposing party to be prepared to meet evidence upon matters in regard to which he had no notice, and great injustice might be done by hearing biased and false testimony to which no answer could be made.

We are of opinion that it is safer and better, in cases of this kind, to adhere to the rule that excludes evidence of specific acts when offered for the purpose of showing character. In *Gore* v. *Curtis*, 81 Maine, 403, this rule was applied to a case almost exactly like the one at bar.

There is some ground for the contention that the testimony of Fottler was admissible on the main issue, as a declaration of a purpose on the plaintiff's part to obtain money by falsely accusing men of making indecent assaults upon her. If it were clear that such a construction should be put upon the testimony, it would be competent. But, excluding the other incompetent evidence and taking it alone, it is too indefinite to show that the plaintiff referred to anything of this kind. It gives a remark made by her twenty-three or twenty-four years before the trial,

in reference to getting "money out of these rich old fellows," without any intimation of how she got it.

The evidence excepted to was of a kind greatly to prejudice the plaintiff on the question of liability, and, it being incompetent for any purpose, it cannot be held that she was not injured by the admission of it. *Ellis* v. *Short*, 21 Pick. 142. *Brown* v. *Cummings*, 7 Allen, 507. *Crowell* v. *Porter*, 106 Mass. 80. *Maguire* v. *Middlesex Railroad*, 115 Mass. 239. In this respect the case differs from those in which it is held that the admission of incompetent evidence on an issue which is made immaterial by the verdict does not render a new trial necessary when the evidence was not of a nature to prejudice the jury on the questions involved in their finding. See *Robinson* v. *Fitchburg & Worcester Railroad*, 7 Gray, 92; *Lawler* v. *Earle*, 5 Allen, 22; *Anthony* v. *Travis*, 148 Mass. 53.          *Exceptions sustained.*